IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DRUMMOND COMPANY, INC., | } | |
| | } | |
| Plaintiff and | } | |
| Counterclaim defendant, | } | CIVIL ACTION NO. |
| | } | 04-AR-0916-S |
| v. | } | |
| | } | |
| RICHARD PAUL MANN, | } | |
| | } | |
| Defendant and | } | |
| Counterclaimant. | } | |

**MEMORANDUM OPINION**

Before the court are cross motions for summary judgment. Plaintiff, Drummond Company, Inc. ("Drummond"), as the administrator of its ERISA qualified health plan, initiated this declaratory judgment action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). Drummond is seeking a declaration that the plan is not required to provide lifetime health benefits to Drummond's former employee, defendant, Richard Paul Mann ("Mann"). Mann's counterclaim seeks a declaration that he is entitled to lifetime benefits under the plan. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331. The issue presented by the cross motions is whether an individual who meets the written eligibility requirements of an ERISA health plan can be denied benefits because he became eligible by presenting false documents. As the following discussion will illuminate, one or more genuine issues of fact exist precluding the entry of judgment in favor of

either Drummond or Mann.

*Summary Judgment Facts[1]*

<u>*Background: The Drummond Health Plan and Labor Agreement*</u>

Drummond is an operator of coal mines.  It negotiates for labor with the United Mine Workers of America ("UMWA"), a labor union.  The Drummond health plan is an "employee welfare benefit plan" within the meaning of ERISA, 29 U.S.C. § 1002(1).  The plan was established as a product of collective bargaining with UMWA to provide health and other benefits to eligible Drummond employees and pensioners.  Article XX Section (c)(3)(i) of Drummond's agreement with UMWA provides:

> "Each signatory Employer shall establish and maintain an Employee benefit plan to provide, implemented through an insurance carrier(s), health and other non-pension benefits for its Employees covered by this Agreement **as well as pensioners**, under the 1974 Pension Plan and Trust **whose last signatory classified employment was with such Employer...**"

(emphasis supplied).

In accordance with the labor agreement, Article II B of Drummond's health plan provides benefits to eligible pensioners, defined as:

---

[1] Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Rule 56(c), F.R.Civ.P.; *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  In assessing whether the movant has met its burden, the court must view the evidence, and all inferences drawn therefrom, in the light most favorable to the non-movant.  *Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 918 (11th Cir. 1993).  In accordance with this standard, and because the parties are simultaneously movants and non-movants with regard to their competing motions, the following statement of facts includes only those facts that are either undisputed or not the subject of a **genuine** dispute based on the evidence before the court.

2

> "any person who is receiving a pension, other than (i)
> a deferred vested pension based on **less than** 20 years
> of credited service...**under the 1974 Pension Plan (or
> any successor thereto)**, whose last classified signatory
> employment was with the Employer subject to the
> provisions of Article II B of this Plan."

(emphasis supplied).

Three features of Drummond's health plan as it pertains to
retired pensioners are important to note: (1) only a pensioner
with twenty years of "credited service" is eligible for lifetime
health benefits; (2) a former Drummond employee with twenty years
of credited service is eligible to receive benefits from the
health plan if Drummond was his **last** UMWA-signatory employer,
whether he worked for Drummond for one month or forty years; and
(3) the Drummond plan uses the credited service determination of
the UMWA pension plan as a proxy for its own determination of an
employee's credited service.

_Mann's Application for Employment and Termination_

In 1994, Drummond was seeking qualified electricians to work
at its Chetopa mine in Jefferson County, Alabama.  Mann applied
for a position and took a written electrical examination.  As
part of his application, Drummond required Mann to submit a copy
of his electrical certification from the United States Mine
Safety and Health Administration ("MSHA").  Mann presented MSHA
cards to Drummond bearing an expiration date of December 1995 and
showing Mann to be a "qualified" electrician.  Drummond did not
hire Mann as an electrician because, as it informed Mann, he had

3

not achieved a high enough score on his written examination.

Several months later, in March 1995, Mann was contacted about a "battery maintenance" job with Drummond.  It is not clear from the record what tasks the battery maintenance job entailed, or whether MSHA certification was a requirement for this position.  Mann did not fill out a second employment application, nor was he asked to re-submit copies of his MSHA cards.  There is no evidence that anyone mentioned MSHA certification to Mann in connection with this job or that the federal Mine Safety and Health Act would have required an employee performing the tasks of the battery maintenance job to have MSHA certification.  Drummond says that it required MSHA electrical certification for battery maintenance workers.  Mann denies this, and submits his own deposition testimony that he did not believe MSHA certification to be a requirement for the position.  In any event, Mann was offered and accepted a battery maintenance position and began working at the Chetopa mine on March 8, 1995.  In August 1995, utilizing a union procedure, he bid out of the maintenance job and into a "general inside" position.  There is no dispute that MSHA certification was not required (by Drummond or by law) for the general inside job.

MSHA electrical certification must be renewed annually.  For an electrician to renew his MSHA certification, he must attend a re-training course.  Mann attended such a course in 1993, such

4

that he was certified through the end of 1994.  He did not, however, attend a course in 1994, and he was not certified through December 1995, as his MSHA cards falsely indicated.  The MSHA cards he submitted to Drummond had an incorrect, "altered" expiration date.  Doc. 22, Mann Brief, p. 2, ¶ 15.

In late 1995, Mann attended a re-training session to obtain MSHA certification for 1996.  When MSHA received paperwork from the session, it notified Drummond that it could not certify Mann for 1996 because he was not certified for 1995. Drummond's Chetopa mine superintendent immediately inquired of Mann as to the status of his MSHA certification.  The superintendent told Mann that he needed to provide proof that he had taken a re-training course in 1994 and that his certification was current through December 1995.  Mann responded that he had not attended a 1994 session and that he did not need certification for his general inside position.  Mann subsequently stopped coming to work.  On December 27, 1995, Drummond notified him in writing that he was suspended with intent to discharge for furnishing "fraudulent copies of electrical cards in order to get a battery maintenance job."  Affidavit of Dean Hubble, Ex. E.

_Mann's UMWA Pension Plan and Drummond Health Plan Status_

When Mann began working at Drummond, he had 19.58 years of credited service under the UMWA pension plan.  Mann was aware that he needed approximately six months of additional credited

service to qualify for lifetime health benefits under a UMWA
signatory employer health plan.  In connection with his initial
employment application, Mann admits that he "submitted
altered...cards...at least in part so that he could attain the
additional six months of credited service that he needed to vest
in a right to receive lifetime health benefits from Drummond."
*See* Doc. 17, Drummond Brief, p. 8, ¶ 17; Doc. 22, Mann Brief, p.
2, ¶ 17.

As the court noted above, the Drummond health plan affords
lifetime coverage to a pensioner whose last UMWA signatory
employer is Drummond and who has at least twenty years of
credited service under the UMWA pension plan.  Drummond is Mann's
last signatory employer, and adding the approximately nine months
that Mann worked for Drummond to his previous 19.58 years of
credited service, Mann satisfies the twenty years of service
requirement of the plan.  By letter dated July 12, 1996, the
United Mine Workers Health and Retirement Funds notified Mann
that he was being awarded a UMWA 1974 Pension Plan Deferred
Vested Pension effective April 1, 1996, based on 20.58 years of
service.

Drummond subsequently refused to enroll Mann in its health
plan.  Mann filed a complaint with the UMWA pension trustees
pursuant to the UMWA/Drummond labor agreement.  On January 17,
2003, the Trustees issued an opinion finding that Drummond was

required to provide health benefits effective April 1, 1996, consistent with the terms of its health plan.  From the trustees' opinion, it appears that Drummond took the same position it is taking before this court: "[Drummond] is not required to provide health benefits...because [Mann] falsified records to gain employment."  Doc. 14, Mann Stmt., Ex. 1.  The trustees' opinion avoided the substance of Drummond's argument by recognizing that "an employer's challenge of a pension eligibility decision...must be raised in a separate procedure authorized by Article XX(g) of the Wage Agreement."  *Id.*  Drummond continued to refuse to enroll Mann and filed a challenge to the pension plan's determination pursuant to Article XX(g).[2]  By letter dated April 28, 2004, UMWA Health and Retirement Funds notified Drummond that:

> Pursuant to Article XX(g) of the National Bituminous Coal Wage Agreement of 2002, the Trustees have considered Drummond Company's challenge of Richard Mann's eligibility for pension credit covering the period March 8, 1995 through December 27, 1995, and have determined that Mr. Mann is entitled to an award of credit for this period.  Mr. Mann performed work under the wage agreement for which he was paid, and under Article IA(12) of the 1974 Pension Plan and governing Department of Labor Regulations, he is entitled to credit for the period of such work.  As a result, Mr. Mann's pension award will not change.

Drummond continued to refuse to enroll Mann and filed its

---

[2] Neither party has submitted a copy of the Drummond health plan or the labor agreement between Drummond and UMWA.  The court is thus faced with a difficult task in ascertaining the scope of an employer's ability under Article XX(g) to challenge the pension plan trustees' years of service determination.  What is undisputed is that the labor agreement provided some right to appeal the pension plan determination and that Drummond in fact exercised this right, although it did not achieve its desired result.

complaint in this court less than one week after receiving the
above-quoted letter.

*Analysis*

At the outset, the court notes that Drummond's declaratory
judgment claim arises solely under the Declaratory Judgment Act,
not under  Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).[3]
*See Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520, 1523-24 (11th
Cir. 1987)(holding that employer's declaratory judgment action
seeking declaration of its liability to former employee on a
claim "was not one for equitable relief...nor was it an action to
enforce the plan" under § 1132(a)(3)).  In light of *Arnold*,
Drummond cannot maintain that its action is an equitable one "to
enforce" the terms of its health plan.  *Id.*  That does not mean,
as Mann suggests, that equitable principles such as estoppel
somehow disappear from the case, much less that Drummond's
declaratory judgment claim disappears altogether.  While Mann is
correct to point out that § 1132(a)(3) does not confer standing
on Drummond as plan administrator to seek equitable relief under
ERISA, he has cited no authority for the proposition that his
alleged employment application fraud is not a legitimate subject
of judicial inquiry.  Accordingly, the court will proceed to

---

[3] Section 1132(a)(3) provides that a civil action may be brought:
"by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice
which violates any provision of this subchapter or the terms of the plan, or
(B) to obtain other appropriate equitable relief (i) to redress such
violations or (ii) to enforce any provisions of this subchapter or the terms
of the plan."

address the parties' respective summary judgment arguments, mindful that Drummond brings its claim under the Declaratory Judgment Act, not under ERISA.

Drummond's arguments are variations on one simple equitable theme: Mann should be estopped from receiving lifetime health benefits for which he is eligible only because he lied on his employment application.  Put another way, Drummond should not be responsible for providing Mann with lifetime health benefits when he never would have been employed by Drummond but for his presentation of falsified MSHA documents, and thus he never would have obtained the necessary twenty years of signatory service (at least not from Drummond).  Drummond suggests several equitable vehicles by which the court may reach Drummond's desired result, but its most substantial argument is that a federal common law estoppel doctrine should apply to deny Mann the benefits he claims.  Drummond also invokes "unclean hands", "unjust enrichment", and a public policy deterrence argument to support its position.

Mann argues that the case does not neatly present the question whether an employee who becomes eligible for a benefit by fraud should be estopped from claiming that benefit.  Both Mann's counterclaim and his opposition to Drummond's motion depend upon two broad underlying propositions.  First, Mann argues that the court need not look beyond the language of the

9

ERISA plan documents themselves to determine his eligibility for benefits and that, if Drummond wanted to reserve the right to deny enrollment to those who make false statements, it should have done so in writing in the plan itself.  Second, as a fallback position, Mann argues that estoppel should not apply here.

In order to resolve the ultimate issue of Mann's right to benefits under the health plan, the court must first determine whether estoppel is available in an ERISA case to deprive an otherwise eligible participant of a benefit on account of his false statement.  Second, if estoppel is available as a matter of federal common law, the court must determine whether genuine issues of fact exist to prevent its application on summary judgment.

*Federal Common Law Under ERISA*

Mann's primary line of argument is that his presentation of false MSHA certification is immaterial because nothing in the terms of the health plan or the UMWA pension plan provides that "credited service" excludes employment that would not have been obtained but for an employee's misrepresentation.  Mann broadly describes this as a failure on Drummond's part to negotiate for a "bad boy" exception in the health plan; but, as Drummond points out, a "bad boy" provision - one that denies benefits to an otherwise eligible participant based on his wrongful on the job

10

conduct – would violate ERISA's anti-forfeiture provision if it were included in the pension plan and would not necessarily cover Mann's misrepresentation due to the fact that his wrongful conduct did not occur on the job.

The real situation is more convoluted than the pictures Mann and Drummond paint in their respective briefs.  Drummond would have the court believe that this case is a straightforward, classic example of a situation in which equitable estoppel should apply to avoid an unjust result.  It posits that MSHA electrical certification is the penultimate qualifier for employment as a battery maintenance worker in a Drummond mine, and it makes much of Mann's submission of altered MSHA cards.  Mann, on the other hand, argues that this is a case where the court need look no further than the health and pension plans themselves to determine that he is entitled to benefits.  Mann further attempts to blur any distinction Drummond draws between the basis for estoppel here – fraud that induced Drummond to extend the employment that enabled Mann to qualify for benefits – and a broader estoppel doctrine based on any terminable job misconduct.  Neither party has it quite right or entirely wrong.

ERISA and labor law principles dictate that the language of the plan and employment agreements predominate and that the court should not re-write them after the fact, particularly not to benefit an employer-administrator by adding eligibility criteria

that the employer-administrator could have bargained for, but did
not.  Nevertheless, the court rejects Mann's argument that
Drummond's claim is nothing more than an effort to add a
judicially imposed "bad boy" exception to the health plan.  The
established ERISA principle that a written plan cannot be
modified or expanded by extrinsic representations or conduct does
not dictate that a participant who obtains his eligibility by
fraud recovers unless the plan contains a specific fraud
exception.  *See Nachwalter v. Christie*, 805 F.2d 956, 960 (11th
Cir. 1986); *National Cos. Health Benefit Plan v. St. Joseph's
Hosp. of Atlanta, Inc.*, 929 F.2d 1558,1571-72 (11th Cir. 1991).
As the district court recognized in *Nash v. Trustees of Boston
Univ.*, 776 F.Supp. 73 (D.R.I. 1990):

> It may be that there was no *per se* violation of the
> written terms of the agreement; but that is not the
> point.  In a fraud, the ultimate, perhaps pristine,
> document the parties execute is not the focus of
> attention.  The trickery employed to reach that end is
> the infectious conduct that destroys the contract and
> becomes the object of inquiry.

*Id.* at 82.

No reasonable person needs to be warned in writing in the plan
document or summary that he cannot obtain benefits by outright
fraud.  A limited federal common law estoppel doctrine that says
a participant cannot profit from such conduct does not undercut
ERISA's core policy of protecting the interests of employees and

their beneficiaries in employee benefit plans.[4]  *See St. Joseph's*, 929 F.2d at 1571.

Accordingly, the court finds that a limited equitable estoppel doctrine is applicable here as a matter of federal common law.  However, for the court to apply estoppel, Drummond must prove the following elements:

> (1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3)the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation.

*St. Joseph's*, 929 F.2d at 1572.

On summary judgment, Drummond must demonstrate the absence of any genuine issue of fact as to each of these elements.  Because Drummond has failed to carry its burden in this regard, and because conversely the court cannot conclude that Mann has

---

[4]Mann's reliance on *Nachwalter* for the proposition that the court may not rely on federal common law to deny him benefits is misplaced.  In that case, the Eleventh Circuit held that estoppel could not be applied to enforce an oral agreement that was inconsistent with the plan's written terms, in light of ERISA's clear policy that plans be maintained in writing. *See Nachwalter*, 805 F.2d at 960-61.  Here, by contrast, a limited estoppel doctrine is consistent with ERISA and the express congressional policies underlying it. *See St. Joseph's*, 929 F.2d at 1571 ("[f]ederal courts possess the authority...to develop a body of federal common law to govern issues in ERISA actions not covered by the act itself")(internal citation omitted). It would not have the effect of contradicting plan language for the court to hold that an individual cannot succeed in obtaining a benefit by defrauding the plan sponsor in order to become technically eligible for benefits.  At most, a limited estoppel doctrine in this context operates to fill the interstices of ERISA and the plan documents in order to take away a benefit flowing from conduct that an ordinary, reasonable plan participant would know to be wrongful.

demonstrated the failure as a matter of law of any of the elements of estoppel, the court will deny both parties' Rule 56 motions.

Drummond's argument that this is a classic case for estoppel unreasonably discounts at least three complicating features of this case.  First, Mann's misrepresentation does not relate directly to his enrollment in the health plan.  There is no dispute that Mann is in fact entitled to benefits according to the plan's written eligibility requirements.  Estoppel here depends upon the somewhat attenuated causal relationship between Mann's misrepresentation and the UMWA pension trustees' ultimate decision to award him over twenty years of credited service.  The application of estoppel would be straightforward if Mann had fraudulently induced the plan to enroll him, or if Drummond was seeking to rescind its employment contract with Mann; but that is not the case.

The involvement of the UMWA pension trustees is a second complicating feature of this case.  According to the terms of the Drummond's health plan and labor agreement, the UMWA pension plan determines the number of years of service to credit to a pensioner like Mann.  The Drummond health plan then uses the pension trustees' determination as a trigger for eligibility; and Drummond, at least arguably, is asking the federal court to undo the trustees' decision – a decision that Drummond agreed would provide a key determinant for health benefit eligibility.

14

Drummond responds by pointing out that it paid contributions to
the pension plan on the hours Mann worked, such that "the
Trustees could not, of course, refuse to give [Mann] credit for
this service."  Because the pension plan had no option other than
to give Mann credit for the time he worked, its determination,
according to Drummond, is an inadequate safeguard against fraud.[5]

Perhaps mindful of the conceptual difficulty in applying
estoppel to give a sophisticated party relief that is both
outside the terms of its ERISA plan and contrary to a decision
that was made according to the plan, Drummond seeks to
distinguish Mann's submission of an altered MSHA card from a
"generalized claim of resume fraud."  According to Drummond, it
is "highly material" that:

> [t]his is not a situation where, for example, the
> defendant altered his high school transcript, or
> inflated his prior experience, or lied about prior
> encounters with legal authorities.  Rather, Mr. Mann
> **altered his MSHA-issued electrical certificate (in
> violation of federal law)**, the very document which
> Drummond had established as the prerequisite for even
> being interviewed for employment.

Doc. 21, Pl. Brief p. 3.  (emphasis supplied).

Drummond's argument, however appealing it may be at first glance,
does not stand up to thorough scrutiny.  Other than the fact that
MSHA certification is federally regulated, Drummond offers no
basis for distinguishing between what Mann did and other types of

---

[5] What preclusive effect, if any, this court should give to the pension
trustees' determination is not adequately articulated or argued by either
party at this stage of the proceedings.

"resume fraud."  To the extent **any** application misrepresentation would have caused Drummond either not to hire an employee, or to fire an employee upon discovery of the misrepresentation, Drummond's argument is nothing more than a "generalized claim of resume fraud."  In fact, one might forcefully argue that it was Drummond's policy of not allowing application misrepresentation to go unpunished, and not anything uniquely odious about the falsification of MSHA cards, that motivated Drummond to terminate Mann, particularly in light of the undisputed fact that MSHA certification was not required by federal law or company policy for the general inside position Mann held at the time his misrepresentation was discovered.

Drummond's effort to distinguish MSHA card falsification from "generalized resume fraud" must depend, therefore, on the federal statutory and regulatory nature of MSHA certification. Drummond argues that because Mann's falsification violated regulations promulgated pursuant to the federal Mine Safety and Health Act, the court should refuse to award him benefits.  In support of this outcome, Drummond cites *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002), an opinion in which the Supreme Court held that federal immigration policy, as expressed in the Immigration Reform and Control Act, foreclosed the National Labor Relations Board from awarding backpay to an undocumented alien who had been unlawfully terminated. *Id.* at

147-49.  Even if Mann's misrepresentation and his subsequent
employment for Drummond exposed both Drummond and himself to
possible civil or criminal penalties, an inquiry that turns on
resolution of one or more genuine issues of fact, *Hoffman* does
not require the court to grant estoppel relief.  This case does
not involve an administrative body's decision to award damages,
and Mann is not seeking an award of damages.  Mann is seeking a
benefit that is governed by an ERISA qualified welfare benefit
plan, a benefit that he is entitled to under the plain and
unequivocal language of the plan.  Accordingly, Drummond's
reliance on *Hoffman* is misplaced, notwithstanding the important
mine safety policies underlying the Mine Safety and Health Act.

     As Mann notes in his brief, a third complicating feature of
this case is that the time he worked as a general inside employee
was enough to qualify him for health benefits, even excluding the
time he worked as a battery maintenance employee.  Laying aside
the issue of whether Mann's statement is factually accurate, his
argument is unavailing.  To the extent Drummond can show that the
elements of estoppel are satisfied here, Mann's argument based on
his time in the general inside position fails. The chain of
causation between Mann's intentional misrepresentation and
Drummond's reliance is unbroken by Mann's utilizing a union job
bidding procedure to move himself into a job that did not require
MSHA certification.  Simply put, if the court should apply
estoppel to negate Mann's technical eligibility for benefits on

the basis of his material, intentional misrepresentation, the fact that he later switched jobs does not counsel against applying estoppel.

*Issues of Fact Precluding Summary Application of Estoppel*

Drummond has failed to carry its Rule 56 burden to demonstrate the absence of any genuine issue of material fact as to at least two of the elements that it must prove for estoppel to apply: materiality and detrimental reliance.[6]  *See St. Joseph's*, 929 F.2d at 1572.  First, Drummond has failed to demonstrate the absence of issues of fact regarding the materiality of Mann's misrepresentation to Drummond's decision to hire him **as a battery maintenance employee**.  Despite the fact that Mann submitted the cards in connection with an application to be a mine electrician, Drummond hired him as a battery maintenance worker, **not** as a mine electrician.  It is entirely unclear, moreover, what the functions and requirements of this job were.  In support of its position, Drummond proffers the affidavit testimony of one of its supervisors, Kem Phillips

---

[6] The court notes that it appears the other elements of estoppel are satisfied here.  Based on Mann's striking admission in response to one of Drummond's assertions of undisputed fact, it appears that Mann was aware that his MSHA cards were "altered" and that he was not in fact certified through the end of 1995.  From this same admission, it also appears that Mann intended Drummond to act on his misrepresentation, though it is less than clear whether he intended merely that Drummond as employer rely on his misrepresentation, or that he intended that Drummond, as sponsor and administrator of the health plan, would rely on his MSHA certification.  Moreover, as the parties have not briefed the question, it is unclear whether the difference between intending Drummond to rely on a misstatement as employer or as plan administrator, "the party asserting the estoppel", should matter.  *See St. Joseph's*, 929 F.2d 1572.

("Phillips").  Phillips does not hold himself out as having
extensive personal knowledge of Drummond's job requirements or
hiring criteria for either of the jobs that Mann held at the
Chetopa mine in 1995.  Instead, Phillips testifies that it "was
my understanding that Drummond required that miners who performed
the battery maintenance job must possess a valid MSHA electrical
card." Phillips Aff. ¶ 5.  He further states that he "recently
discussed" the requirements for a battery maintenance position
that were in effect in 1995 "with several knowledgeable people",
all of whom confirmed his understanding that electrical
certification was required.  This is hearsay, and whether true or
not, Phillips' affidavit on its face cannot be said to establish
as summary judgment fact that Drummond required MSHA electrical
certification to hold a battery maintenance job.

Further, and perhaps more importantly, the Phillips
affidavit does absolutely nothing to establish that Drummond
violated federal law or regulation or subjected itself to
possible fines or penalties by placing Mann in a battery
maintenance position without his having current MSHA electrical
certification.  For this reason, a genuine issue of fact exists
as to whether Drummond relied on Mann's representation **to its
detriment**.  The court must limit estoppel where a plan sponsor
asserts it against a participant who satisfies written
eligibility criteria, in order to insure that estoppel does not

19

turn into a *carte blanche* opportunity for employers to challenge

benefit entitlements based on "generalized resume fraud."

Because the legislative history of ERISA holds out to employees

that ERISA secures employee benefits against unpredictable,

collateral attack, Drummond cannot prove detrimental reliance

simply by showing that the plan will incur coverage costs due to

Mann's enrollment.  There is no dispute that Mann performed

satisfactory work for Drummond.  Drummond suggests that federal

law required Mann to have an MSHA card, but it does not provide

specific, undisputed evidence regarding the applicability of

federal mine safety law and regulations to the tasks performed in

a battery maintenance job to support the conclusion that Drummond

risked exposure to penalties.  Therefore, Drummond's motion must

be denied insofar as it relies on estoppel.

*Unclean Hands, Unjust Enrichment, and Public Policy Deterrence*

    In addition to federal common law estoppel, Drummond invokes

unclean hands, unjust enrichment, and public policy as

alternative (if not wholly independent) bases for entering a

declaration that Mann is not entitled to health benefits. Each of

these alternative arguments is similarly unavailing.  First,

assuming *arguendo* that a plaintiff may raise an unclean hands

defense in an offensive summary judgment motion, and further

assuming that Mann's misrepresentation is "directly related" to

his claim for health benefits, unclean hands does not apply here

because Drummond cannot show that it was "personally injured" by Mann's submission of false MSHA cards.  *See Calloway v. Partners Nat. Health Plans*, 986 F.2d 446, 450-51 (11th Cir. 1993).  There is no evidence that Drummond was subjected to fines or other punishment for employing Mann in the battery maintenance or general inside positions that he held.  There is further no dispute that Mann's job performance was satisfactory.  At risk of repetition, the fact that Mann's satisfactory work allowed him to become eligible for health benefits under Drummond's health plan is not a "personal injury" that may serve as the basis for an unclean hands defense.

Drummond's unjust enrichment and public policy arguments fail for two reasons.  First, Drummond cites no authority for the applicability of either doctrine, other than an unpublished district court opinion and an Alabama statute that is preempted by ERISA.  Thus, at the very least, Drummond has failed on summary judgment to carry its burden of demonstrating entitlement to judgment as a matter of law on these theories.  The second reason these arguments fail is that the analysis Drummond provides in support of its unjust enrichment and public policy arguments is indistinguishable from what it has already said in support of its estoppel argument.  Therefore, to the extent Drummond is able to prove that the essential elements of estoppel are satisfied, estoppel provides a better way for Drummond to take advantage of Mann's alleged fraud as a matter of federal

21

common law.  Conversely, if Drummond fails to prove materiality
and detrimental reliance in support of its estoppel argument, the
court will not grant Drummond relief under the rubric of unjust
enrichment or public policy.

*Conclusion*

Under limited circumstances, the court can apply estoppel as
a matter of federal common law to withhold benefits from a plan
participant who has intentionally defrauded his employer even
though he is otherwise entitled under the ERISA plan.  Those
limited circumstances do not yet exist and may or may not be
proven at trial.  Genuine issues of fact exist to preclude the
entry of summary judgment based on estoppel, namely, whether
Mann's misrepresentation was material and whether Drummond relied
on Mann's misrepresentation to its detriment.  Finally,
Drummond's alternative arguments in support of its motion fail as
a matter of law, and one or more genuine issues of fact exist
requiring the denial of Mann's motion for summary judgment.
Accordingly, the cross motions for summary judgment will be
denied by separate order.

DONE this 31st day of August, 2005.


WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

22